UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| CLIFF NIIRANEN and ROBERT TREADWAY, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | |
| CARRIER ONE, INC. and IVAN SAMAROV, individually, | ) ) ) ) | |
| Defendants. | ) ) | |

**CLASS ACTION COMPLAINT**

1. Defendant Carrier One, Inc. ("Carrier One") is a flatbed transportation services company located in the Chicago metropolitan area that transports steel, building materials, heavy equipment, and other freight over the road for its customers.

2. Defendant Ivan Samarov is the president of Carrier One (together they are referred to in this complaint as "Defendants"); on information and belief Samarov owns all or part of Carrier One, which is privately held.

3. Plaintiff Cliff Niiranen is a former driver for Carrier One and Plaintiff Robert Treadway is a current driver for Carrier One, who bring this action both individually and on behalf of all others similarly situated in order to challenge the following unlawful practices of Defendants: misclassifying Carrier One drivers as independent contractors when they are, in fact, employees; failing to pay all wages

owed to Carrier One drivers; taking unlawful and excessive deductions from Carrier One drivers' wages; and failing to reimburse drivers for expenses.

4. Plaintiffs Niiranen and Treadway and the putative class of similarly situated over-the-road drivers allege that Defendants' unlawful practices described in this complaint deprived them of wages owed to them in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/9.

## PARTIES

5. Plaintiff Niiranen is an adult resident of Clark County, Washington. He was employed by Defendants as an over-the-road driver from approximately February 2017 until approximately December 2019.

6. Plaintiff Treadway is an adult resident of Jasper County, Texas. He has been employed by Defendants as an over-the-road driver since approximately August 2017.

7. Plaintiffs Niiranen and Treadway bring this action on behalf of a putative class of similarly situated individuals, namely: "all persons who executed Independent Contractor Lease Agreements (or similar contracts) with Carrier One and have performed work in the State of Illinois for Carrier One pursuant to those contracts during the relevant statutory period."

8. Plaintiffs and the members of the putative class are "employees" of Defendants within the meaning of the IWPCA.

9. Defendant Carrier One, Inc. ("Carrier One"), is a Delaware corporation that was headquartered in Cook County, Illinois until recently. In or around January

2020, Carrier One moved its headquarters to Lake County, Indiana. Carrier One has done business and continues to do business in Illinois, operates facilities in Illinois, and is registered with the Illinois Secretary of State.

10. Defendant Ivan Samarov has been an Illinois resident and has held himself out as the President of Carrier One at all times relevant to this matter. Samarov possesses and exercises the authority to: make or participate in decisions concerning drivers' compensation; implement and enforce rules affecting the material terms of drivers' work, employment, and compensation; hire drivers, supervise their work, and impose discipline on them.

11. Defendants jointly and severally are subject to the provisions of the IWPCA and are "employers" within the meaning of those statutes.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

13. The Court has personal jurisdiction over Defendants because Defendant Carrier One is registered with the Illinois Secretary of State, Defendant Ivan Samarov is named as president of Carrier One in its filings with the Illinois Secretary of State, Defendants do business in the State of Illinois, and Defendants have expressly consented to personal jurisdiction in the State of Illinois and this judicial district.

14. The Court has personal jurisdiction over Plaintiffs Niiranen and Treadway the putative class because they have worked in Illinois for an Illinois employer.

15. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district.

**FACTUAL BACKGROUND**

1. Defendants hired Plaintiff Cliff Niiranen as an over-the-road driver to provide flatbed transportation services to Defendants' freight customers in approximately February 2017.

2. Defendants hired Plaintiff Robert Treadway as an over-the-road driver to provide flatbed transportation services to Defendants' freight customers in approximately August 2017.

3. At Niiranen's and Treadway's time of hire, Carrier One was headquartered at 12161 South Central Avenue in Alsip, Illinois.

4. Most of Carrier One's customers are located in the Chicago metropolitan area, primarily in Illinois; its drivers primarily pick up freight from those customers and then transport the freight to locations throughout the United States.

5. In order to begin working as an over-the-road driver for Carrier One, Niiranen and Treadway were each required to attend an unpaid orientation of approximately three or four days at Carrier One's headquarters in Alsip, Illinois.

6. The orientation sessions attended by Niiranen and Treadway were company-specific onboarding processes for individuals whom Defendants intended to employ as over-the-road drivers.

7. The orientation sessions are held at Carrier One facilities and conducted by Carrier One employees.

8. During orientation, Niiranen and Treadway were required to attend classes focused on Defendants' policies, procedures, and systems and to perform other tasks typical for new employees.

9. Niiranen and Treadway were not paid any wages for their labor or services rendered during the mandatory orientation.

10. On information and belief, all members of the putative class were required to attend similar unpaid orientation sessions.

11. In order to be hired as over-the-road drivers by Carrier One, Niiranen and Treadway needed to lease a truck from Impel Union, an Illinois corporation co-located with Carrier One at 12161 South Central Avenue in Alsip, Illinois.

12. On information and belief, Impel Union acted directly or indirectly in the interest of Carrier One in relation to Carrier One's drivers.

13. In order to lease a truck from Impel Union, Niiranen was required to sign a standard-form contract with Impel Union titled "Agreement for Lease of Equipment," which he did on March 8, 2017.

14. On that same day, Niiranen was also required to sign a standard-form contract with Carrier One titled "Independent Contractor Equipment Lease Agreement," which he did.

15. Niiranen was also required to sign a form on March 8, 2017, titled "Authorization Form," directing Carrier One to make payments to Impel Union of $675

5

each week for Niiranen's rental of a 2015 Peterbilt with 217,696 miles and $120 each week for insurance, for a total of $795 each week, to be deducted from Niiranen's weekly wages.

16. All three agreements were standard-form contracts, presented to Niiranen for signature.

17. Treadway was similarly presented with the same standard-form contracts for signature.

18. Carrier One's Equipment Lease Agreement states that driver compensation "shall be 80 percent of the gross revenue for all loads, paid Friday for all paperwork delivered the preceding Monday."

19. Carrier One's Equipment Lease Agreement also states that the following deductions will be taken on a weekly basis: Occupational Accident Insurance Premiums ($50 per week); Registration ($65 per week); E-log ($20 per week); IFTA ($0.02 per mile); Maintenance ($0.05 per mile); Trailer Security deposit ($50 per week for 20 weeks).

20. These terms and all other terms of the contract with Carrier One were presented to Niiranen and Treadway on a take-it-or-leave-it basis with no opportunity for negotiation.

21. On information and belief, Carrier One required all members of the putative class to enter into these same or similar agreements under the same or similar circumstances.

22. Although the Equipment Lease Agreement purports to be an agreement between a CONTRACTOR that "owns equipment suitable for providing motor

6

transportation services" and CARRIER ONE, which is leasing that equipment, other terms of the agreement make it clear that the signatory is not just providing equipment but is agreeing to "perform services" for Carrier One by choosing to "accept [] work offered to CONTRACTOR by CARRIER ONE."

23. The Agreement makes numerous conclusory statements to further the fiction that Carrier One's drivers are not employees of Carrier One, but the governing terms of the Agreement clearly retain for Carrier One total operational and financial control:

    a. Exclusive authority to negotiate with Carrier One's customers over linehaul revenue rates, of which drivers receive a percentage, as well as separately stated charges, which are not included in linehaul revenue;

    b. Exclusive authority to determine whether Carrier One's customers will be charged for detention, layover, or truck-ordered-not-used;

    c. Requiring drivers to use and submit forms prescribed by Carrier One in order to receive payment from Carrier One;

    d. Requiring drivers to bear all costs, fees, and expenses incurred in connection with the ownership, use, operation, licensing and maintenance of the trucks used by drivers to provide Carrier One's transportation services to Carrier One customers;

    e. Requiring drivers to submit to a system whereby Carrier One makes deductions directly from drivers' compensation for all amounts

7

unilaterally determined by Carrier One to be owed by drivers to Carrier One or third-parties, including but not limited to deductions for cargo or property damage; and

f. Preventing drivers from "trip leasing," i.e. running loads for another motor carrier under Carrier One's operating authority, without the prior, express, written permission of Defendant Samarov.

24. In fact, as well as under the contract of service, Defendants control and direct the performance of their over-the-road drivers' work:

a. Defendants' driver managers assign loads to drivers, effectively controlling drivers' schedules;

b. As a matter of policy, Defendants do not allow drivers to book their own loads;

c. If a driver manager does not assign loads to a driver, the driver is forced to wait without compensation for the next load; sometimes for as long as 36 hours;

d. Although Defendants claim that they do not use a "forced dispatch" system, they effectively force dispatch by punishing drivers if they reject loads by withholding additional loads and/or by only assigning low-paying loads that do not cover costs;

e. Defendants require drivers to give their driver managers advance notice of at least two weeks for home time;

f. Defendants' driver managers call in drivers to Carrier One's headquarters for quarterly truck and trailer inspections and maintenance, annual performance reviews, as well as other reasons including citation reviews and installing software updates on Carrier One's Qualcomm system;

g. Defendants maintain a code of conduct, violation of which may result in immediate termination;

h. Defendants' driver managers supervise drivers to ensure compliance with customers' dress codes and other customer-specific procedures;

i. Carrier One drivers cannot work for both Carrier One and other carriers without authorization because they drive under Carrier One's operating authority, in trucks clearly identified as Carrier One trucks;

j. Because of the structure of lease payments, Carrier One's drivers have no choice but to take shipments as directed by Defendants or they will quickly fall into default.

25. Plaintiffs Niiranen and Treadway and the putative class members perform work – providing flatbed transportation services to Carrier One's customers – that is within the usual course of business of Carrier One – providing flatbed transportation services to Carrier One's customers.

26. Plaintiffs Niiranen and Treadway and the putative class members do not have independently established trades or businesses.

27. Defendants determine all aspects of the insurance that they requires of their drivers, by selecting the insurance company, the specific policy, the amount of coverage, the price of premiums charged to drivers, and the amount of the deductible.

28. Plaintiffs Niiranen and Treadway and the members of the putative class are paid through settlement statements issued by Carrier One.

29. The settlement statements are itemized by order (load) and list the gross pay for the order, the 80 percent rate earned by the driver, and any accessorial charges earned by the driver.

30. On information and belief, the amounts listed as gross pay on the settlement statements do not always match the actual linehaul revenue amounts that Defendants negotiate with their customers; in other words, Defendants take a cut of the revenue before determining drivers' 80 percent share, in contravention of their own contracts.

31. In this manner, Defendants fail to pay drivers all compensation owed to them.

32. Carrier One deducts from each settlement statement fixed amounts for truck lease payments, insurance premiums, registration fees, and e-log fees, as well as other deductions.

33. Carrier One also deducts from each settlement statement variable amounts for mandatory contributions to a maintenance fund, International Fuel Tax Agreement taxes, fuel costs, as well as other deductions, itemized by order (load).

34. These deductions are not required by law.

35. These deductions are not to the benefit of the drivers.

36. Drivers do not freely give express written consent at the time these deductions are made.

37. Carrier One did not receive proper authorization from the drivers for these deductions.

38. The amounts of these deductions from any one salary or wage payment routinely exceed 25 percent of the net amount of the payment.

39. For example, Plaintiff Niiranen received a weekly wage payment on March 4, 2019 in which his total gross earnings was $5,336.81, but after deductions totaling $3,390.14 and reimbursements of $60.04, his net pay was only $2,006.71. The amount of these deductions exceeded 165 percent of the net amount of the payment.

40. Drivers typically use Carrier One's fuel card to purchase fuel, which is then deducted from drivers' wages through payroll deductions.

41. Drivers are charged a fee for each use of the fuel card.

42. On information and belief, Carrier One has at times retained fuel discounts for itself and has not passed those along to its drivers, which effectively means that Carrier One has deducted more for fuel from its drivers' wages than Carrier One actually paid for fuel.

43. Defendants also fail to reimburse drivers for tolls and other necessary expenditures and losses required of drivers in the discharge of their employment duties that inure to the primary benefit of Defendants.

11

**CLASS ALLEGATIONS**

44. Plaintiffs Niiranen and Treadway bring this lawsuit against Defendants as a class action pursuant to Fed. R. Civ. P. 23 class action for and on behalf of the following class for which Plaintiffs seek certification:

> All persons who executed Independent Contractor Lease Agreements (or similar contracts) with Carrier One and have performed work in the State of Illinois for Carrier One pursuant to those contracts during the relevant statutory period.

45. This case may be maintained properly as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3).

46. The class is so numerous that joinder of all potential class members is impracticable. On information and belief, the class is comprised of at least two hundred drivers. Plaintiffs do not know the exact size of the class since that information is within the control of Defendants.

47. There are questions of law or fact common to the class that predominate over any individual issues that might exist. Common questions of law and fact include whether Defendants have misclassified drivers as independent contractors; whether Defendants have failed to pay drivers promised wages; and whether Defendants have taken unlawful deductions from drivers' wages.

48. The class claims asserted by Plaintiffs are typical of the claims of potential class members. Defendants operate in a highly regulated industry that requires them to maintain standard operating procedures and uniform policies, procedures, and practices. Plaintiffs Niiranen's and Treadway's and all class members' claims for

unpaid wages and unlawful deductions should be readily calculated from Defendants' business records.

49. Plaintiffs Niiranen and Treadway will fairly and adequately protect and represent the interests of the class. Their interest in challenging the unlawful practices of Defendants motivates them to bring this case as a class action. Plaintiff Niiranen specifically sought out the undersigned counsel, who are experienced in wage and hour litigation and class actions generally as well as in the trucking industry.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The alternative – numerous identical lawsuits alleging similar or identical causes of action – would not serve the interests of judicial economy and the prosecution of separate actions by the individual potential class members would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendants. Moreover, some class members – particularly current drivers – may be reluctant to bring their claims individually for fear of retaliation by Defendants.

51. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the IWPCA to workers, whose individual claims may be too small to warrant the expense of litigation.

52. This class action will not be difficult to manage due to the uniformity of claims among the class members and the amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

53. The contours of the class will be easily defined by reference to business records kept by Defendants.

## CLAIMS FOR RELIEF

### COUNT I:
### ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Class Claims)

54. Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

55. Plaintiffs assert this claim on behalf of themselves and the Rule 23 class.

56. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/1 by failing to pay Plaintiffs and the Rule 23 class all wages earned.

57. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 1151/9 by taking unlawful deductions from the wages earned by Plaintiffs and the Rule 23 class.

58. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9 by routinely deducting greater than 25 percent of the net amount of wages earned by Plaintiffs and the Rule 23 class.

59. Defendants violated the IWPCA, 820 Ill. Comp. Stat. 115/9.5 by failing to reimburse Plaintiffs and the Rule 23 class for tolls and other necessary expenditures and losses required of drivers in the discharge of their employment duties that inure to the primary benefit of Defendants.

60. Plaintiff and the Rule 23 class seek recovery of their unpaid wages, reimbursement for unlawful deductions, reimbursement for out-of-pocket expenses,

liquidated damages, and attorneys' fees and costs pursuant to 820 Ill. Comp. Stat. 115/14(a).

## COUNT II:
## BREACH OF CONTRACT
### (Class Claims)

61. Plaintiffs re-allege and incorporate by reference all previous paragraphs of this Complaint as if fully rewritten herein.

62. Defendants' contracts with Plaintiffs and the Rule 23 class require Defendants to compensate drivers by paying them a fixed percentage of a load's revenue.

63. Defendants fail to pay Plaintiffs and the Rule 23 class based on the actual revenue charged to Defendants' customers.

64. Plaintiffs and the Rule 23 class have been deprived of compensation to which they were entitled and therefore have been injured by Defendants' breach of contract.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court grant the following relief:

    a.    Certification of this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3);

    b.    Appointing Plaintiffs Niiranen and Treadway as class representatives and their counsel as class counsel;

    c.    An order enjoining Defendants from violating the IWPCA;

    d.    All unpaid wages;

e. Restitution for all deductions taken from class members' wages;

f. Restitution for all Defendants' operating expenses that class members were forced to bear;

g. An award to Plaintiffs and the Rule 23 class of damages, liquidated damages and penalties pursuant to the formula set forth in 820 Ill. Comp. Stat. 115/14(a);

h. Prejudgment interest;

i. Attorneys' fees and costs, pursuant to 820 Ill. Comp. Stat. 115/14(a);

j. Any other relief as this Court deems just and proper.

Respectfully submitted,

CLIFF NIIRANEN and ROBERT TREADWAY, individually and on behalf all others similarly situated,

By their attorneys,


*/s/ Bradley Manewith*
Bradley Manewith, #6280535
Marc J. Siegel, #6238100
SIEGEL & DOLAN LTD.
150 North Wacker, Suite 3000
Chicago, Illinois 60606
Tel: (312) 878-3210
Fax: (312) 878-3211
msiegel@msiegellaw.com
banewith@msiegellaw.com


Hillary Schwab
*Pro hac vice application pending*
Rachel Smit
*Pro hac vice application pending*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
Email: hillary@fairworklaw.com,
rachel@fairworklaw.com

Dated: November 16, 2020