IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFF NIIRANEN, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 20-cv-06781 |
| v. | ) ) | Judge Andrea R. Wood |
| CARRIER ONE, INC., et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Cliff Niiranen and Robert Treadway are both former over-the-road drivers for Defendant Carrier One, Inc. Plaintiffs allege that, during their employment, Carrier One, Inc. and Defendant Ivan Samarov (collectively, "Carrier One") failed to pay Plaintiffs and similarly situated drivers compensation owed to them and took unlawful deductions from their wages, thereby violating the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq.*, as well as breaching Carrier One's contracts with Plaintiffs. Now before the Court is Carrier One's motion to dismiss Count I, Count III, and any claims on behalf of a putative class in Plaintiffs' first amended class action complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 37.) For the reasons that follow, Carrier One's motion is granted in part and denied in part.

### BACKGROUND

For purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to Plaintiffs as the non-moving parties. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Plaintiffs allege as follows.

Defendant Carrier One, Inc. is a flatbed transportation services company serving the Chicago metropolitan area. (FAC ¶ 1, Dkt. No. 30.) It is owned wholly or in part by Defendant Ivan Samarov, who also serves as the company's president. (*Id.* ¶ 2.) Carrier One's drivers pick up freight, such as steel and heavy equipment, from its customers and transport it across the United States. (*Id.* ¶¶ 1, 2(2).)[1] Carrier One was headquartered in Illinois until it moved to Indiana in January 2020. (*Id.* ¶ 10.) Most of Carrier One's customers are located in the Chicago metropolitan area. (*Id.* ¶ 6(2).)

Plaintiffs Niiranen and Treadway are former Carrier One over-the-road drivers who are not residents of Illinois. (*Id.* ¶¶ 3, 6–7.) Both Plaintiffs began working for Carrier One in 2017. (*Id.* ¶¶ 6–7, 3(2)–4(2).) As a part of the onboarding process, Plaintiffs were required to attend a mandatory, unpaid orientation held at Carrier One facilities in Alsip, Illinois over a period of three or four days. (*Id.* ¶¶ 7(2)–11(2).) To work as a Carrier One driver, Plaintiffs were required to lease a truck from Impel Union, an Illinois corporation that shared a headquarters with Carrier One. (*Id.* ¶ 13(2).) At the same time, Plaintiffs entered into a standard-form contract with Carrier One titled "Independent Contractor Equipment Lease Agreement" ("Equipment Lease") and a separate "Authorization Form" that directed Carrier One to make payments to Impel Union for Plaintiffs' truck rental and associated insurance costs. (*Id.* ¶¶ 16(2)–17(2), 18–19, 23.) Carrier One would deduct those payments to Impel Union from Plaintiffs' weekly wages. (*Id.* ¶ 17(2).) All three agreements were presented to Plaintiffs and all members of the putative class on a take-it-or-leave-it basis with no opportunity for negotiation. (*Id.* ¶¶ 18–19, 22–23.)

---

[1] The paragraph numbers in Plaintiffs' FAC reset back to 1 after paragraph 17, resulting in duplicate paragraph numbers 1 through 17. For purposes of this opinion, citations to the second instance of a paragraph number are denoted by "(2)."

2

Under Carrier One's Equipment Lease, Plaintiffs were to be paid weekly in an amount equal to 80 percent of the gross revenue for all that week's loads. (*Id.* ¶ 20.) Further, the Equipment Lease listed several deductions that would be taken from Plaintiffs' weekly paychecks. (*Id.* ¶ 21.) While the Equipment Lease referred to Plaintiffs as contractors who owned trucks that were being leased by Carrier One, other terms of the agreement provided that Plaintiffs were also agreeing to perform services for Carrier One under its direction and control. (*Id.* ¶¶ 24–26.)

Each week, Plaintiffs were paid through settlement statements issued by Carrier One. (*Id.* ¶ 30.) The settlement statements listed the gross pay for the order, but Plaintiffs allege that Carrier One took a cut of the gross revenue before determining Plaintiffs' 80 percent share, in contravention of the Equipment Lease. (*Id.* ¶¶ 31–32.) Thus, according to Plaintiffs, Carrier One failed to pay all compensation owed to them. (*Id.* ¶ 33.) Carrier One also took additional deductions and chargebacks from the settlement statements beyond those disclosed in the Equipment Lease. (*Id.* ¶¶ 34–39, 48–49.) Those deductions were not authorized by the drivers and routinely exceeded 25 percent of their net payment. (*Id.* ¶ 40.) Moreover, Carrier One made escrow fund deductions but failed to fulfill its obligations to pay interest on those deductions and return the deductions in full at the conclusion of the employment relationship. (*Id.* ¶¶ 50–53.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs allege that Carrier One violated the IWPCA and the Truth-in-Leasing regulations, and also breached its contracts with Plaintiffs, and they seek to assert those claims on behalf of themselves and a putative class. While Carrier One's motion to dismiss seeks dismissal of the entire FAC, it makes no arguments as to Plaintiffs' individual breach of contract claims. Instead, it targets only Plaintiffs' individual IWPCA and Truth-in-Leasing claims and all three of Plaintiffs' claims insofar as Plaintiffs seek to bring those claims on behalf of a class. The Court first addresses whether Plaintiffs adequately pleaded IWPCA and Truth-in-Leasing claims before turning to whether a class action can be maintained.

## I. IWPCA

The IWPCA allows employees to sue their employer for the timely and complete payment of earned wages and prohibits employers from taking unauthorized deductions from employees' wages. *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016); *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016). It applies to all "employers and employees in [Illinois]." 820 ILCS 115/1. The Seventh Circuit, however, has concluded that the IWPCA does not have an "extraterritorial reach." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998). Rather, the IWPCA's "evident purpose is to protect employees ***in Illinois*** from being stiffed by their employers." *Id.* Carrier One therefore contends that Plaintiffs, non-Illinois-resident employees of an Illinois employer, cannot bring an IWPCA claim unless they have performed a substantial amount of their work in Illinois. Carrier One claims that Plaintiffs' allegations that

4

they attended a one-time training in Illinois and that most of Carrier One's customers are in the Chicago metropolitan area do not suffice to plead that the IWPCA applies to them.[2]

In response, Plaintiffs first argue that the Seventh Circuit's interpretation of the IWPCA has been superseded by a more recent decision by the Illinois Appellate Court, which rejected a quantum of work requirement for IWPCA coverage so long as the employee works for an employer located in Illinois. *Watts v. ADDO Mgmt., LLC*, 97 N.E.3d 75, 82 (Ill. App. Ct. 2018) ("[I]t is clear that the [IWPCA's] application is not limited to any specific quantum of work performed in Illinois but, in fact, may apply in certain circumstances even where all of the work is performed outside of this state."). However, this Court is bound by the Seventh Circuit's interpretation of Illinois law even if a subsequent Illinois Appellate Court decision is contrary to the Seventh Circuit's interpretation. *See Cilliers v. Cobalt Holdings, Inc.*, No. 18 C 2428, 2019 WL 1514977, at *2–3 (N.D. Ill. Apr. 8, 2019) (declining to apply *Watts*'s interpretation of the IWPCA). "Just as the court of appeals must follow decisions of the Supreme Court whether or not [the court of appeals] agree[s] with them, so district judges must follow the decisions of [the Seventh Circuit] whether or not they agree." *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (citations omitted) (concluding that decisions from state appellate courts "assuredly . . . do not themselves liberate district judges from the force of [the Seventh Circuit's] decisions"). Only a subsequent ruling by the Illinois Supreme Court would supersede the Seventh Circuit's interpretation of state law. *Id.* Since the Illinois Supreme Court has not spoken on this issue, the Court must follow the Seventh Circuit precedent.

---

[2] The IWPCA defines the term "employee" broadly, such that "all individuals are considered to be employees of an employer, unless the employer can prove **all three** prongs" of the statute's independent contractor exemption. *Costello*, 810 F.3d at 1050, 1059 (citing 820 ILCS 115/2). Although the Equipment Lease refers to Plaintiffs as contractors (FAC ¶ 24), Carrier One does not contest—at least with respect to this motion—that Plaintiffs are employees for purposes of the IWPCA.

The Seventh Circuit has held that the IWPCA does not apply to out-of-state residents who conduct no work in Illinois. *Glass*, 133 F.3d at 1000. At the same time, the IWPCA's "applicability to nonresidents who perform their work in Illinois for an instate employer is sufficiently clear." *Adams v. Catrambone*, 359 F.3d 858, 864 (7th Cir. 2004). Carrier One acknowledges that the IWPCA applies to non-Illinois residents like Plaintiffs but argues that under *Glass* and *Adams* Plaintiffs must plead that "most" of their work occurred in Illinois. To find otherwise would be contrary to *Glass*'s holding that the IWPCA does not have extraterritorial reach.

This Court does not understand either *Glass* or *Adams* as setting the bar as high as Carrier One urges. Importantly, the employee in *Glass* was not an Illinois resident and performed **all** of his alleged work in Spain. *Glass*, 133 F.3d at 1000. It was in that context that the Seventh Circuit held that the IWPCA's protection did not extend to employees abroad, as "[e]ven federal statutes presumptively lack extraterritorial reach." *Id.* But *Adams* clarified that the IWPCA applies to non-residents who perform work in Illinois. 359 F.3d at 862–63. While Carrier One correctly notes that the plaintiff in *Adams* alleged that he did "substantial work" for the defendant, with "most" of that work occurring in Illinois, *id.* at 861, Carrier One incorrectly extrapolates from the mention of those allegations that *Adams* imposes a quantum of work requirement at the motion to dismiss stage. The Seventh Circuit only noted the quantity of the plaintiff's work performed in Illinois in setting out the factual allegations, *id.*, but that allegation was not a factor in its IWPCA analysis. Instead, *Adams* simply recognized "what *Glass* implied and what the language of the statute makes plain: nonresidents of Illinois who work in that state for an in-state employer may qualify as employees [under the IWPCA]." *Id.* at 863.

Accordingly, district courts have applied *Glass* and *Adams* to find that the IWPCA "does not apply simply because an employee has performed '*any* work in Illinois for an Illinois employer.'" *Cohan v. Medline Indus., Inc.*, 170 F. Supp. 3d 1162, 1174–75 (N.D. Ill. 2016) (quoting *Vendetti v. Compass Env't, Inc.*, No. 06 CV 3556, 2006 WL 3694852, at *2 (N.D. Ill. Dec. 14, 2006)). Nonetheless, "[n]o court of binding authority has set forth a minimum quantum of work in Illinois to qualify as an employee under the [IWPCA]." *Yata v. BDJ Trucking Co.*, No. 17 cv 3503, 2018 WL 3303290, at *5 (N.D. Ill. July 5, 2018). Consequently, courts in this District have rejected the argument that an employee did not perform enough work in the state at the motion to dismiss stage. *Cohan v. Medline Indus., Inc.*, No. 14 CV 1835, 2014 WL 4244314, at *4 (N.D. Ill. Aug. 27, 2014). Rather, district courts have found that non-resident employees need only plead that they have done *some* work for an Illinois employer while physically present in Illinois to state an IWPCA claim. *See Spaulding v. Abbott Lab'ys*, No. 10 C 199, 2010 WL 4822894, at *6 (N.D. Ill. Nov. 22, 2010). Arguments about whether *enough* work was performed in Illinois are more appropriately raised at the summary judgment stage. *Id.*

Here, unlike the plaintiff in *Glass*, Plaintiffs have pleaded that at least some of their work occurred in Illinois. For instance, Plaintiffs allege that they attended a mandatory, unpaid orientation at Carrier One's headquarters in Alsip, Illinois. (FAC ¶ 7(2)–11(2)); *see Cohan*, 2014 WL 4244314, at *4 (accounting for the plaintiff's twice-yearly attendance at Illinois-based meetings as work performed in Illinois). Additionally, it is reasonable to infer that Plaintiffs performed other work in Illinois because most of Carrier One's customers are in the Chicago metropolitan area and Plaintiffs performed work "within the usual course of business of Carrier One." (FAC ¶¶ 6(2), 27.) Viewing these factual allegations together, Plaintiffs have adequately

alleged that they performed some work in Illinois.[3] That is enough at the pleading stage. *Cohan*, 2014 WL 4244314, at *4 (noting that the plaintiff "was not required to plead every fact concerning his work in Illinois" and that "there may be more" in-state work adduced after discovery).

Because Plaintiffs have adequately alleged that they performed some work in Illinois for an in-state employer, the Court denies Carrier One's motion to dismiss the IWPCA claims. Of course, discovery will allow Carrier One to ascertain the precise amount of work Plaintiffs performed in Illinois. If the evidence suggests that Plaintiffs failed to perform enough work to be considered "employees in this State," Carrier One may raise that argument on summary judgment. *Yata*, 2018 WL 3303290, at *5.

## II. Truth-in-Leasing Regulations

Under 49 U.S.C. § 14102(a)(4), the United States Secretary of Transportation has the authority to "issue regulations governing the lease of vehicles between authorized carriers and owners-operators"— "owners-operators" meaning "trucker drivers who own their trucks and lease them to shippers or authorized carriers." *Shimko v. Jeff Wagner Trucking, LLC*, No. 11-cv-831-wmc, 2013 WL 10075919, at *2 (W.D. Wis. June 28, 2013). The Truth-in-Leasing regulations, 49 C.F.R. § 376.1 *et seq.*, were promulgated pursuant to that statutory authority. Relevant here, "the regulations protect owners-operators by requiring carriers to enter written leases with certain mandatory terms." *Shimko*, 2013 WL 10075919, at *2.

---

[3] Although the FAC does not expressly allege that Plaintiffs did any work in Illinois other than one three-to-four-day orientation, Plaintiffs' allegations that they performed work in Carrier One's usual course of business and that most of Carrier One's clients were in Chicago, taken together, allow the Court reasonably to infer that Plaintiffs did other work in Illinois besides the orientation.

Plaintiffs contend that Carrier One failed to comply with the Truth-in-Leasing regulations by making chargebacks and escrow deductions to Plaintiffs' pay that were not disclosed in the Equipment Lease. The Truth-in-Leasing regulations require authorized carriers like Carrier One to disclose in their leases with owners-operators all chargeback items, meaning those items "that may initially be paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment," along with how each chargeback was computed. 49 C.F.R. § 376.12(h). Similarly, any payments to escrow funds must also be specified in the lease under 49 C.F.R. § 376.12(k)(1). Further, when an authorized carrier makes escrow deductions, it must pay interest on those deductions and return them in full to the owner-operator when their relationship ends. *Id.* § 376.12(k)(5)–(6). Yet Plaintiffs contend that Carrier One neither paid interest on amounts deducted in escrow nor returned those funds in full.

According to Carrier One, Plaintiffs' Truth-in-Leasing claim must be dismissed because they fail to plead that they sustained actual damages as a result of any violation of the regulations. Plaintiffs' private right of action for Truth-in-Leasing violations is supplied by 49 U.S.C. § 14704(a)(2), which makes a carrier "liable for damages sustained by a person as a result of an act or omission of that carrier . . . in violation of this part." *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1113–14 (9th Cir. 2011) (observing that § 14704(a) provides a private right of action to enforce the Truth-in-Leasing regulations). While the Seventh Circuit has not squarely addressed the issue, the majority of courts that have considered it "have reached the conclusion that § 14704(a)(2) requires evidence of actual damages." *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.*, 622 F.3d 1307, 1325 (11th Cir. 2010) (collecting cases). Consequently, those courts have required owners-operators to

9

do more than simply point to the carrier's undisclosed profits. *Id.* Rather, they must "show how they sustained damages because of the violations." *Id.*

Plaintiffs cite *Brinker v. Namcheck*, 577 F. Supp. 2d 1052, 1063 (W.D. Wis. 2008), where the district court held that "the motor carrier is responsible for expenses that it has failed to 'specify' or 'clearly specify' as being the responsibility of the owner-operator." However, that case is an outlier. *See Goodwin v. Am. Marine Exp., Inc.*, No. 1:18-CV-01014, 2021 WL 848948, at *38 n.12 (N.D. Ohio Mar. 5, 2021) (finding *Brinker* to be unpersuasive "given the strength of authority holding that actual damages are required"). Plaintiffs also rely on *Bonkowski v. Z Transport, Inc.*, No. 00 C 5396, 2004 WL 524723, at *3 (N.D. Ill. Mar. 5, 2004), where the district court awarded "the total business and operating expenses that Plaintiff incurred during the period he was driving the tractor pursuant to the lease agreement" as damages for the defendant's Truth-in-Leasing violations. But the district court in *Bonkowski* also explained that the defendant "waived its ability to contest the amount of damages when it elected not to appear for trial." *Id.* Finally, Plaintiffs cite *Yata v. BDJ Trucking Co.*, No. 17-cv-03503, 2021 WL 1738520, at *2–4, 6 (N.D. Ill. May 3, 2021), but there the district court held only that the defendants violated the Truth-in-Leasing regulations and stated that it would "address damages later in the proceedings."

This Court believes that the courts in the majority requiring actual damages have the stronger argument. Requiring actual damages is consistent with the language of § 14704(a)(2), which makes carriers liable only for "damages ***sustained*** by a person ***as a result of*** an act or omission" in violation of the Truth-in-Leasing regulations. 49 U.S.C. § 14704(a)(2) (emphasis added); *see, e.g.*, *Landstar*, 622 F.3d at 1325 ("The Owner-Operators' argument that it is entitled to [the carrier's] undisclosed profits is akin to statutory or presumed damages, rather than

10

sustained damages as required by § 14704(a)(2)."). However, adopting an actual damages requirement does not necessarily compel dismissal of Plaintiffs' Truth-in-Leasing claims.

As an initial matter, most courts have addressed whether an owner-operator has sustained actual damages as a result of a carrier's Truth-in-Leasing violations at the summary judgment stage. *See Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 912 & n.8 (W.D. Ky. 2018) (collecting cases). In any case, Plaintiffs here have adequately alleged that Carrier One's violations caused them actual damages. Broadly, Plaintiffs have alleged that Carrier One's Truth-in-Leasing violations resulted in them being compensated "at a rate that was less than the rate promised in their [Equipment Lease]." (FAC ¶ 95.) Owners-operators have been found to plead actual damages adequately when they allege that the carrier's Truth-in-Leasing violations resulted in them being underpaid. *E.g.*, *Carter*, 324 F. Supp. 3d at 912; *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-CV-674, 2017 WL 11572196, at *7 (E.D. Tenn. Nov. 22, 2017). Moreover, it is reasonable to infer that Plaintiffs sustained actual damages from Carrier One's failure both to pay interest on its escrow deductions and then to return those deductions in full after Plaintiffs stopped working for it. *See Owner-Operator Indep. Drivers Ass'n v. Ledar Transp., Inc.*, No. 00-258-CV-W-2-FJG-ECF, 2008 WL 857758, at *4 (W.D. Mo. Mar. 31, 2008) ("The unrecovered net balance in the escrow account is the amount of damage suffered by the Plaintiffs as a result of the Defendant's wrongdoing." (internal quotation marks omitted)). These allegations suffice to plead actual damages. Plaintiffs will, of course, have to prove their damages moving forward. But for now, Carrier One's motion to dismiss Plaintiffs' Truth-in-Leasing claims is denied.

### III. Class Claims

Plaintiffs seek to bring all three of their claims on behalf of themselves and a putative class. However, Carrier One notes that Plaintiffs' FAC alleges that Plaintiffs signed an updated

version of the Equipment Lease in 2019. (FAC ¶ 62.) The updated Equipment Lease contains the following provision:

> **CONTRACTOR AND CONTRACTOR'S WORKERS WAIVE ANY RIGHT TO INITIATE, JOIN (I.E., OPT IN TO), REMAIN IN (I.E., NOT OPT OUT OF), OR OTHERWISE PARTICIPATE IN ANY CLASS ACTION, COLLECTIVE ACTION, CONSOLIDATED ACTION, OR REPRESENTATIVE ACTION BROUGHT AGAINST CARRIER ONE, INCLUDING BUT NOT LIMITED TO SUCH ACTIONS BROUGHT UNDER STATE OR FEDERAL LAW AND THOSE ARISING UNDER THE FAIR LABOR STANDARDS ACT.**

(FAC, Ex. 3 § 26(b), Dkt. No. 30-3.)[4] Carrier One argues that pursuant to this provision, Plaintiffs waived their right to bring any claims on behalf of a class. In response, Plaintiffs contend that the class-action waiver cannot be enforced, either because the waiver conflicts with Illinois and federal law or because the provision is unconscionable.[5] And to the extent the class-action waiver is enforceable, Plaintiffs contend that it cannot be applied to claims arising prior to when Plaintiffs signed the updated Equipment Lease in 2019.

### A. Waivability of IWPCA and Truth-in-Leasing Class Actions

According to Plaintiffs, an employee cannot contract away his right to bring or participate in a class action because such a waiver conflicts with federal and Illinois law. First, Plaintiffs argue that the Seventh Circuit has recognized that Sections 7 and 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 157–58, render class and collective-action waivers in employment agreements unenforceable. Specifically, in *Lewis v. Epic Systems Corp.*, 823 F.3d

---

[4] Because the updated Equipment Lease was attached to the FAC, the Court may consider its contents in deciding Carrier One's Rule 12(b)(6) motion. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[5] Plaintiffs also suggest that Carrier One is prohibited from asserting its class-action-waiver argument because it did not raise it in its original motion to dismiss. Under Rule 12(g)(2), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." It suffices to say that Carrier One's waiver defense was not available to it when it first moved to dismiss because the updated Equipment Lease was first mentioned in (and attached to) the FAC.

1147, 1151–54 (7th Cir 2016), *rev'd*, 138 S. Ct. 1612 (2018), the Seventh Circuit held that filing a collective or class action lawsuit is one of the "concerted activities" protected by Section 7 of the NLRA, and thus Section 8 "renders unenforceable any contract provision purporting to waive employees' access to such remedies." The Seventh Circuit therefore ruled that an arbitration provision in an employment agreement that mandated claims be arbitrated on an individual basis was unenforceable. *Id.* at 1154–56.

As Plaintiffs acknowledge, the Supreme Court reversed the Seventh Circuit's decision, holding that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, required the arbitration agreement to be enforced as written (*i.e.*, as permitting individual arbitration only) and Congress did not intend the NLRA to displace the legislative judgment embodied by the FAA. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). Nonetheless, Plaintiffs contend that because the Supreme Court's decision concerned a class-action waiver in an arbitration agreement and hinged on the legislative purpose behind the FAA, the Seventh Circuit's decision in *Lewis* retains vitality outside of the arbitration context. Put differently, Plaintiffs contend that where, as here, there is a class-action waiver in an employment agreement but no arbitration agreement, the FAA is inapplicable and Sections 7 and 8 of the NLRA control. The problem with Plaintiffs' argument is that the Supreme Court did not simply conclude that the FAA was not displaced by the NLRA. Rather, it observed that the "notion that Section 7 confers a right to class or collective actions seems pretty unlikely." *Epic Sys.*, 138 S. Ct. at 1624. While the Supreme Court did not squarely reject the possibility, its decision repeatedly expressed substantial doubt that Section 7 of the NLRA affords any protection to class and collective action procedures. *See, e.g., id.* at 1625–26 ("[I]t is hard to fathom why Congress would take such care to regulate all the other matters mentioned in Section 7 yet remain mute about this matter alone—unless, of course, Section 7

13

doesn't speak to class and collective action procedures in the first place."). Thus, there is no reason to believe that any part of the Seventh Circuit's rationale in *Lewis* survives such that it would preclude enforcement of a class-action waiver outside of the arbitration context.

In addition, Plaintiffs assert that enforcing the class-action waiver would undermine the policies underlying the IWPCA and the Truth-in-Leasing regulations. They rely on a Sixth Circuit case invalidating a collective-action waiver in an employment separation agreement as impermissibly limiting employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 590–92 (6th Cir. 2014). However, the FLSA includes a provision expressly authorizing employees to proceed collectively. 29 U.S.C. § 216(b) ("An action to recover the liability prescribed in the preceding sentences may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). The Sixth Circuit explained that by including that provision, Congress stated its policy that FLSA plaintiffs should have the opportunity to proceed collectively. *Killion*, 761 F.3d at 590. Neither the IWPCA nor the Truth-in-Leasing regulations contain such express authorization for class or collective actions. *See* 49 U.S.C. § 140704(a)(2); 820 ILCS 115/14. Moreover, even as to the FLSA, several courts in this Circuit have held that § 216(b) does not give a plaintiff an unwaivable right to bring a collective action. *E.g.*, *Copello v. Boehringer Ingelheim Pharms. Inc.*, 812 F. Supp. 2d 886, 894 (N.D. Ill. 2011) ("[W]hile FLSA prohibits ***substantive*** wage and hour rights from being contractually waived, it does not prohibit contractually waiving the ***procedural*** right to join a collective action."); *Brown v. Sears Holdings Mgmt. Corp.*, No. 09 C 2203, 2009 WL 2514173, at *3 (N.D. Ill. Aug. 17, 2009). This Court

14

therefore finds no conflict between the class-action waiver and either the IWPCA or the Truth-in-Leasing regulations that would preclude enforcement of the waiver.

### B. Unconscionability

Plaintiffs also argue that the class-action waiver cannot be enforced because it is unconscionable under Illinois law. In Illinois, a contract can be either procedurally unconscionable, substantively unconscionable, or a combination of both. *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006). "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Id.* On the other hand, substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006).

The only argument Plaintiffs make as to the procedural unconscionability of the class-action waiver concerns the fact that the Equipment Lease was presented to Plaintiffs on a take-it-or-leave-it basis. Plaintiffs claim they had no meaningful choice in agreeing to waive their right to pursue class actions because their continued employment with Carrier One depended on them signing the updated Equipment Lease with the waiver. However, the Illinois Supreme Court has been clear that such "contracts of adhesion" are "a fact of modern life" and "[i]t cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable." *Id.* at 266. Instead, the procedural unconscionability analysis "should be examined with reference to all the circumstances surrounding the transaction." *Id.* at 265; *see also Copello*, 812 F. Supp. 2d at 895 ("Illinois law . . . holds that proposing an unfavorable contract

15

provision on a take-it-or-leave-it basis can be procedurally unconscionable only if some other factor is present, such as the provision being hidden in fine print.").

Here, there are no other aspects of the class-action waiver that tend to suggest any degree of procedural unconscionability. The provision is set out in a separately numbered section of the updated Equipment Lease and differentiated from other provisions by the fact that it is printed in bold, all-capital letters. *See, e.g.*, *Mathys v. Hartford Gold Grp., LLC*, No. 20 C 3927, 2020 WL 7183744, at *3 (N.D. Ill. Dec. 7, 2020) (finding that arbitration clauses were not so inconspicuous as to make them procedurally unconscionable when they were bolded and in all capital letters); *Bess v. DirecTV, Inc.*, 885 N.E.2d 488, 497 (Ill. App. Ct. 2008) (observing that nothing in the record suggested that the plaintiff could not locate, read, or understand an arbitration provision when it was printed in capital letters and in boldface type). Further, Plaintiffs initialed the bottom of each page of the updated Equipment Lease, indicating that they had read and agreed to the terms on that particular page. *See Mathys*, 2020 WL 7183744, at *3; *Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) ("[B]y signing the retainer agreement, Plaintiff acknowledged that she read and understood the terms of the agreement including the arbitration clause. Therefore, Plaintiff's argument that no one informed her that there was an arbitration clause in the agreement or what that arbitration clause meant is immaterial."). Finally, the class-action waiver is written in plain English and easy to understand. Thus, the Court finds that the waiver is not procedurally unconscionable.

That the class-action waiver is not procedurally unconscionable does not mean that it might not be unenforceable due to substantive unconscionability. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant

cost-price disparity." *Kinkel*, 857 N.E.2d at 267. The Illinois Supreme Court has specifically addressed the substantive unconscionability of class action waivers and explained that

> a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner.

*Id.* at 274.

Plaintiffs contend that the class-action waiver is substantively unconscionable because it deprives Carrier One drivers of their only effective mechanism for vindicating their claims. In *Kinkel*, the Illinois Supreme Court invalidated a class-action waiver where other provisions in the contract "operate[d] together to create a situation where the cost of vindicating the claim [was] so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy [was] as either the representative or a member of the class." *Id.* at 275. But *Kinkel* involved a plaintiff with a $150 claim and a contract that required her to arbitrate the claim but did not disclose that arbitration would cost $125. *See id.* at 267–68, 274–75. By contrast, here, Plaintiffs have alleged that they seek damages in excess of $75,000 in connection with their claims—as they must, since their claims are brought under this Court's diversity jurisdiction. (FAC ¶ 13.) Thus, "[t]his is not a case where plaintiff's damages are so small that neither he nor a lawyer would be interested in pursuing an individual action." *Powell v. Payday Loan Store of Ill., Inc.*, No. 09 C 4146, 2010 WL 3893894, at *6 (N.D. Ill. Sept. 28, 2010). Moreover, Plaintiffs are entitled to recover costs and reasonable attorney's fees should they prevail on their IWPCA and Truth-in-Leasing claims. 49 U.S.C. § 14704(e); 820 ILCS 115/14(a); *see Copello*, 812 F. Supp. 2d at 896 ("The magnitude of [the plaintiff's] claimed damages, together with the attorney fee provision, leaves [the plaintiff] eminently capable of attracting counsel to help vindicate her individual claims."). Given the circumstances, it cannot be said that the class-action procedure

provides the only reasonable, cost-effective means for Plaintiffs to obtain a complete remedy for their claims. For that reason, the Court finds that the class-action waiver is not substantively unconscionable.

### C. Claims Arising Prior to Plaintiffs' Execution of Updated Equipment Lease

Given the lack of procedural and substantive unconscionability, the Equipment Lease's class-action waiver must be enforced. Yet Plaintiffs contend that even if the waiver is enforceable, it cannot serve to waive class claims predating Plaintiffs' execution of the updated Equipment Lease in 2019. As Carrier One notes, however, the updated Equipment Lease contains the following provision stating that it supersedes all previous agreements: "This Agreement constitutes the entire agreement between CARRIER ONE and CONTRACTOR pertaining to the subject matter contained herein and fully replaces and supersedes all prior and contemporaneous agreements, representations, and understandings, except as provided in Section 27 of this Agreement." (FAC, Ex. 3 § 20(e).) Moreover, the class-action waiver itself provides that Plaintiffs waive their right to initiate or participate in *any* class action brought against Carrier One. Thus, reading these two provisions together demonstrates that Plaintiffs are precluded from bringing any claims on behalf of a class, no matter when those claims arose. As a result, the Court grants Carrier One's motion to dismiss the entirety of Plaintiffs' claims insofar as they are brought on behalf of a class of similarly situated Carrier One drivers.

## CONCLUSION

For the foregoing reasons, Carrier One's motion to dismiss (Dkt. No. 37) is granted in part and denied in part. Carrier One's motion is denied as to Plaintiffs' individual claims but granted to the extent that Plaintiffs seek to bring their claims on behalf of a class of similarly situated Carrier One drivers.

ENTERED:

Dated: January 11, 2022

Andrea R. Wood
United States District Judge